[No. G044107. Fourth Dist., Div. Three. July 25, 2011.]

LIGIA JAQUELINE VACA, as Trustee, etc., Plaintiff and Appellant, v. WACHOVIA MORTGAGE CORPORATION et al., Defendants and Respondents.

**COUNSEL**

Graham & Martin and Anthony G. Graham for Plaintiff and Appellant.

Anglin, Flewelling, Rasmussen, Campbell & Trytten and Robert A. Bailey for Defendants and Respondents.

## OPINION

**IKOLA, J.**—Plaintiff Ligia Jaqueline Vaca, as trustee of the trust for the benefit of the minor children Martin Hinojosa, Paula Hinojosa and Pamela Hinojosa, appeals from a judgment entered after the court sustained a demurrer to her complaint without leave to amend. The court found plaintiff's claims were time-barred.

We agree and affirm. The complaint shows plaintiff's fraud and related causes of action accrued by June 2005. The limitations periods expired no later than June 2008 and June 2009, but she did not file this suit until July 2009. Plaintiff fails to allege any continuing wrong that would have delayed the start of the limitations periods. And while plaintiff does allege defendants' identities[1] were fraudulently concealed, defendants are not equitably estopped from asserting the statute of limitations—plaintiff discovered their identities at least one year before the limitations periods expired.

## FACTS

### The Second Amended Complaint

Plaintiff commenced this action in July 2009. After the court sustained demurrers to the initial complaint and a first amended complaint, plaintiff filed a second amended complaint. She asserted causes of action for aiding and abetting fraud, breach of trust, breach of fiduciary duty, conversion, and unjust enrichment. She also asserted causes of action for unfair and unlawful business practices. She alleged the following facts.[2]

Plaintiff and her estranged husband (husband) have three minor children. During the marriage, husband created false credit histories for the children. Husband then used the children's identities to carry out fraudulent transactions on two real properties.

#### The Cherokee Property

Husband's mother (mother-in-law) purchased the house at 2102 Cherokee in Tustin, using husband and plaintiff's community property. Mother-in-law

---

[1] The named defendants are Wachovia Mortgage Corporation, Wachovia Mortgage FSB, Wachovia Corporation, Wells Fargo, N.A., and Wells Fargo Home Mortgage.

[2] " 'We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law.' " (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58] (*Blank*).)

then sold the house to two of the children for a profit in June 2000. The children bought the house with a mortgage—at an artificially inflated interest rate—from defendants. Husband prepared a grant deed transferring all interest in the property to one of the children. Husband then obtained a refinance mortgage in that child's name—at an artificially inflated rate—from defendants' predecessor in June 2001. Husband later prepared a grant deed transferring all interest in the property to his corporation. The corporation refinanced the mortgage with a lender run by husband and mother-in-law, then executed a grant deed transferring all interest in the property to mother-in-law.

### The Palermo Property

Husband used two of the children to purchase a house at 2151 Palermo, Tustin in October 2001. The children obtained a mortgage from defendants' predecessor. Husband later prepared a grant deed transferring all interest in the property to his corporation. The corporation refinanced the loan with a lender run by husband and mother-in-law, then sold the property in August 2003 to mother-in-law, who obtained a mortgage from defendants' predecessor.

### Discovery of Alleged Wrongdoing

Plaintiff discovered the fraudulent transactions during a 2004 dissolution action, and filed a fraud action against husband and mother-in-law in June 2005. In the fraud action, husband and mother-in-law admitted the relevant facts concerning the fraudulent transactions. The parties settled the fraud action—husband and mother-in-law agreed to pay off the children's credit cards, give the Cherokee property to a trust for the children, and provide funds to plaintiff to pay off the Cherokee mortgage. Husband and mother-in-law transferred the Cherokee property to the trust, but otherwise failed to perform. Mother moved to enforce the settlement, and judgment was entered against husband and mother-in-law on May 1, 2007. Husband and mother-in-law satisfied the judgment in October 2007 and the action was dismissed.

Meanwhile, in May 2007, husband told plaintiff that defendants "knew what he was doing in terms of using his children's identities to fraudulently procure loans in their names," but " 'they do not care so long as the bills are paid.' " Husband was a real estate professional who had developed "long-term business relationships" and "personal friendships" with defendants' local loan officers and managers. They knew husband, plaintiff, and the children—and knew the children were minors. Husband told them he had falsely told

plaintiff he was purchasing the properties in trust for the children. Defendants' representatives knowingly allowed husband to use the children's fraudulent credit histories to obtain mortgages on the two properties "to unjustly enrich themselves"—presumably through the artificially inflated interest rates.

Plaintiff could not have discovered any sooner defendants' knowing participation in the fraud. "During the Fraud Action extensive discovery was taken, including depositions. During discovery and during the course of the Fraud Action, [husband, his companies, and mother-in-law] never identified Defendants as persons having knowledge of the relevant facts." And during the fraud action, plaintiff "contacted each of the Defendants on more than a dozen occasions seeking assistance from them concerning this ongoing fraud. . . . Defendants . . . refused to take any action and refused to assist [plaintiff] in any way."

*The Demurrer*

Defendants demurred on several grounds, including the statute of limitations. Defendants asked the court to take judicial notice of documents including the complaint, judgment, and acknowledgement of satisfaction of judgment from the fraud action, the trust documents, and the recorded instruments tending to show mother-in-law refinanced the Palermo property with another lender in 2007, which foreclosed on the property in 2008 and sold it to another buyer.

Plaintiff opposed, contending the action was not time-barred for two reasons. First, plaintiff contended defendants' wrongful conduct continued past the issuance of the fraudulent mortgages in 2000 and 2003. She asserted the Palermo property was sold in 2007, which was when "the Trust lost all right to that trust property and was thus financially damaged as a result of the breach of trust." And she asserted defendants still refuse to transfer mother-in-law's loan on the Cherokee property to the trust or allow the trust "to pay for the mortgage in the ordinary manner." Second, plaintiff contended defendants' identities were fraudulently concealed, despite her reasonably diligent discovery efforts. Plaintiff asserted she "specifically demand[ed] the names of all persons with knowledge of the facts" during discovery, but husband and mother-in-law "perjured themselves." She further asserted she had "requested both orally and via subpoena all relevant documents and information [from defendants] relating to the fraudulent loans," but defendants "failed to identify their own role in the fraud."

The court sustained the demurrer to all causes of action without leave to amend. It found plaintiff "certainly knew [of the fraud] when she filed the second suit in 2005, the one the plaintiff calls the 'fraud suit.' [¶] But three years before July 27, 2009—which is when today's case was filed—only gets plaintiff back to 2006. This complaint does not allege any act of [defendants] in that 3-year period of time, which would constitute the aiding and abetting of a fraud in that period." The court applied a similar analysis to find the other causes of action were time-barred.[3] It entered judgment accordingly.

## DISCUSSION

"When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action. [Citation.] And when it is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm." (*Blank, supra,* 39 Cal.3d at p. 318.)

■ "The statute of limitations usually commences when a cause of action 'accrues,' and it is generally said that 'an action accrues on the date of injury.' [Citation.] Alternatively, it is often stated that the statute commences 'upon the occurrence of the last element essential to the cause of action.' " (*Bernson v. Browning-Ferris Industries* (1994) 7 Cal.4th 926, 931 [30 Cal.Rptr.2d 440, 873 P.2d 613] (*Bernson*).) "These general principles have been significantly modified by the common law 'discovery rule,' which provides that the accrual date may be 'delayed until the plaintiff is aware of her injury and its negligent cause.' " (*Ibid.*) Now, under the discovery rule, " 'the statute of limitations begins to run when the plaintiff suspects or should suspect that her injury was caused by wrongdoing, that someone has done something wrong to her.' " (*Id.* at p. 932.)

Yet "ignorance of the identity of the defendant is not essential to a claim and therefore will not toll the statute." (*Bernson, supra,* 7 Cal.4th at p. 932.)

---

[3] The court further found plaintiff could not state causes of action for conversion or unjust enrichment. (See *Salma v. Capon* (2008) 161 Cal.App.4th 1275, 1295 [74 Cal.Rptr.3d 873] ["The tort of conversion applies to personal property, not real property."]; *Melchior v. New Line Productions, Inc.* (2003) 106 Cal.App.4th 779, 793 [131 Cal.Rptr.2d 347] [unjust enrichment is " ' "a general principle," ' " not a cause of action]; but see *Hernandez v. Lopez* (2009) 180 Cal.App.4th 932, 938 [103 Cal.Rptr.3d 376] [court "focused unduly on labels" by rejecting unjust enrichment and conversion causes of action].) In any event, these claims are time-barred, too.

"Aggrieved parties generally need not know the exact manner in which their injuries were 'effected, nor the identities of all parties who may have played a role therein.' " (*Ibid.*)

Plaintiff's causes of action accrued no later than June 2005, when she filed the fraud action against husband and mother-in-law. By then, she suspected " 'someone ha[d] done something wrong' " to the children on whose behalf she sued. (*Bernson, supra,* 7 Cal.4th at p. 932.) She knew the details of the fraudulent transactions well enough to allege the underlying facts—including the mortgages obtained from defendants—in her fraud complaint. And she alleged the children had suffered damages from the fraud. Thus, even if plaintiff was ignorant of defendants' role in the fraud, by June 2005 plaintiff had discovered facts sufficient to apprise her of her injury and start the limitations period on her causes of action against defendants. (*Ibid.*) And those periods expired in June 2008 for the fraud claim and June 2009 for the other claims—before plaintiff commenced this action in July 2009.[4]

Plaintiff maintains the limitations period has not run for two reasons. She contends defendants engaged in continuing wrongs, postponing the start of the limitations period. She also contends defendants are equitably estopped from asserting the statute of limitations because their identity was fraudulently concealed. Not so.

First, plaintiff offers no allegations sufficient to invoke the continuing wrong doctrine. Her only cited authority on that doctrine is *Pugliese v. Superior Court* (2007) 146 Cal.App.4th 1444, 1452 [53 Cal.Rptr.3d 681], which held domestic violence is a continuing tort for statute of limitations purposes. It relied upon the unique nature of domestic violence and a statute providing that "domestic violence lawsuits must be commenced within three years 'from the date of the *last act* of domestic violence . . . .' " (*Id.* at pp. 1451, 1454–1456.)

The allegations of the second amended complaint bear no resemblance to the series of violent acts that extended the limitations period in *Pugliese.* In fact, the second amended complaint contains no allegations defendants did anything wrong after making the fraudulent mortgage loans in 2000 and

---

[4] The limitations period for fraud is three years. (Code Civ. Proc., § 338, subd. (c).) The limitations period for breach of fiduciary duty is at most four years. (Code Civ. Proc., § 343.) The limitations period for unfair and unlawful business practices is four years. (Bus. & Prof. Code, § 17208.)

2001. In her appellate briefs, plaintiff asserts defendants continued to injure her through 2010 because the Palermo property was sold in 2007 and the Cherokee property was sold in 2010. She also asserts defendants refused through 2010 to assign the Cherokee mortgage to the trust, while demanding payment of fees incurred pursuant to the terms of the mortgage. At most, these allegations may show plaintiff still suffers from the fraudulent loans made in 2000 and 2001.

■ But if continuing injury from a completed act generally extended the limitations periods, those periods would lack meaning. Parties could file suit at any time, as long as their injuries persisted. This is not the law. The time bar starts running when the plaintiff first learns of actionable injury (*Bernson, supra,* 7 Cal.4th at p. 932), even if the injury will linger or compound. " ' "[W]here an injury, although slight, is sustained in consequence of the wrongful act of another, and the law affords a remedy therefor, the statute of limitations attaches at once. *It is not material that all the damages resulting from the act shall have been sustained at that time, and the running of the statute is not postponed by the fact that the actual or substantial damages do not occur until a later date . . . ." ' "* (*Spellis v. Lawn* (1988) 200 Cal.App.3d 1075, 1080–1081 [246 Cal.Rptr. 385].)

■ Second, the fraudulent concealment doctrine does not help plaintiff. Although "ignorance of the identity of the defendant . . . will not *toll* the statute" (*Bernson, supra,* 7 Cal.4th at p. 932, italics added), "a defendant may be *equitably estopped* from asserting the statute of limitations when, as the result of intentional concealment, the plaintiff is unable to discover the defendant's actual identity" (*id.* at p. 936, italics added). So even if defendants' identities were fraudulently concealed, that would not "toll" the statute of limitations. At most, defendants would be "equitably estopped" from invoking it. Tolling and estoppel work differently, and on the pleaded facts, estoppel would not save plaintiff from the time bar.

"Equitable tolling and equitable estoppel are distinct doctrines. ' "Tolling, strictly speaking, is concerned with the point at which the limitations period begins to run and with the circumstances in which the running of the limitations period may be suspended. . . . Equitable estoppel, however, . . . comes into play only after the limitations period has run and addresses . . . the circumstances in which a party will be estopped from asserting the statute of limitations as a defense to an admittedly untimely action because his conduct has induced another into forbearing suit within the applicable limitations period." ' " (*Lantzy v. Centex Homes* (2003) 31 Cal.4th 363, 383

[2 Cal.Rptr.3d 655, 73 P.3d 517] (*Lantzy*).) For a defendant to be equitably estopped from asserting a statute of limitations, the plaintiff must be "directly prevented . . . from filing [a] suit on time." (*Id.* at p. 385.)

■ Any fraudulent concealment of the defendants' identities did not prevent the plaintiffs from filing a timely suit against them.[5] " ' "Equitable estoppel . . . comes into play only after the limitations period has run . . . ." ' " (*Lantzy supra,* 31 Cal.4th at p. 383.) But plaintiff alleges she discovered defendants' role in the fraud in May 2007—one or two years before the limitations periods had expired. Plaintiff thus learned defendants' identities in time to assert timely causes of action against them. But she failed to do so, and alleges no excuse for that delay. Because she had timely knowledge of defendants' alleged roles in the fraud, any initial concealment of their identities did not "directly prevent[ plaintiff] from filing [her] suit on time."[6] (*Lantzy,* at p. 385.)

■ "When a ground for objection to a complaint, such as the statute of limitations, appears on its face or from matters of which the court may or must take judicial notice, a demurrer on that ground is proper." (*Hightower v. Roman Catholic Bishop of Sacramento* (2006) 142 Cal.App.4th 759, 765 [48 Cal.Rptr.3d 420].) The second amended complaint is time-barred on its face. Plaintiff cannot rely on either the continuing wrong or fraudulent concealment doctrines to escape this conclusion. ■ No reasonable possibility exists that plaintiff could amend to plead around the limitations periods—" '[a] plaintiff may not avoid a demurrer by pleading facts or positions in an amended complaint that contradict the facts pleaded in the original complaint or by suppressing facts which prove the pleaded facts false.' " (*McKell v. Washington Mutual, Inc.* (2006) 142 Cal.App.4th 1457, 1491 [49 Cal.Rptr.3d 227].) Thus, the court correctly sustained the demurrer without leave to amend.

---

[5] We assume plaintiff alleged facts supporting the fraudulent concealment doctrine. Plaintiff asserts husband failed to identify defendants in his discovery responses, and defendants failed to reveal their involvement in response to unspecified subpoenas and oral requests. But it is not clear the bare failure to implicate oneself warrants equitable estoppel. "[A] mere *denial of defendants' liability,* rather than a *representation of fact,* [is] insufficient to establish an estoppel to assert the statute of limitations." (*Lantzy supra,* 31 Cal.4th at p. 385, fn. 20.)

[6] Moreover, plaintiff alleges she did not dismiss the fraud action until October 2007, after she learned about defendants. Thus, she could have substituted defendants as "Doe" defendants in that action. "That, indeed, is the normal situation for which the fictitious name statute, Code of Civil Procedure section 474, is designed: when the plaintiff is ignorant of the name of '*a* defendant,' the plaintiff must file suit against the known wrongdoers, and, when the Doe's true name is discovered, the complaint may be amended accordingly." (*Bernson, supra,* 7 Cal.4th at p. 933.)

## DISPOSITION

The judgment is affirmed. Defendants shall recover their costs on appeal.

Bedsworth, Acting P. J., and Aronson, J., concurred.